at all. And we have Mr. Pope and Mr. Massey here today. And Mr. Pope, if you are ready to proceed, please begin. Good morning, and may it please the court. This is David Pope, and I am the attorney general of Urieli Carbajal. I represent the appellants in this matter, who are the personal representatives of Mr. Expo. And this matter concerns an incident that occurred during which Mr. Expo lost his life while performing repairs on a vessel in the navigable waters of the United States. So therefore, we believe this is a properly an admiralty and maritime case that is being considered. Mr. Mr. Pope, are you on video? I should be. There we go. Okay. Sorry, I didn't see that click to start. I'm sorry. The, the appeal that we are considering is from an omnibus order of the district court, in which the district court granted all pending summary judgment motions and awarded Rizzo, the vessel owner who had filed for exoneration from or limitation of liability, awarded them exoneration, no fault. The basis, we believe, and the incorrect basis we believe of the court's ruling was that this matter, the claim of Mr. Expo, and the rights and duties of the parties associated with that claim, and the limitation action itself involved the Longshore and Harbor Workers Compensation Act remedy, as opposed to a general maritime law remedy. The court emphasized in its opinion that this particular vessel which the record evidence shows it's the motor vessel honey, which was I believe 163 foot yacht, otherwise classified as a recreational vessel, was docked at a Marina facility in, I think it was called Old Port Cove in North Palm Beach. When the incident occurred. The incident actually involved whole cleaning on the motor vessel honey performed by Mr. Expo. During the course of which can I interrupt you. We don't have a lot of time, could you get right to the point and telling us why the district court was wrong. Yes, ma'am. The Longshore and Harbor Workers Compensation Act itself provides in its definition of covered employees. And I better go first. The Compensation Act provides that it is the exclusive remedy for claims properly brought under it against the vessel for negligence. But during in the act itself, and I think it's the 33 US code section 9023. The act itself defines employee and says, an employee does not include. And that's in subsection F individuals employed to build any recreational vessel under 65 feet in length, or individuals employed to repair any recreational vessel, without regard to length. Mr Pope, how is whole cleaning a repair. Well, I would reference back to a court decision from this court in the. I think it's called the aqua clean case that where someone was sustained fatal injuries while cleaning a whole, a whole of a commercial vessel, not a recreational vessel. And this court fully approved the application of the Longshore Act to that activity as a repair under within within the meaning of the Longshore Act. The difference in this case is the character of the vessel involved, and the particular provision of the Longshore Act itself. I do know that the note that the court referenced a catch all phrase or provision at the end of subsection three of section nine or two, which said if individuals described in clauses a through F and F is the one we're talking about or I'm talking about are subject to coverage under a state workers compensation law. And the court in order to continue uphold its determination that this case should be decided under the Longshore and Harbor Workers Compensation Act and in particular, which I'll address in a minute the Cindy duties under that act that there was a provision in the state of Florida since this incident occurred in Florida at which removes and this is chapter 440 Florida statutes subsection to says that there will be benefits are not payable in respect of the disability or death of an employee covered by. And one of the options is Longshore and Harbor Workers Compensation Act. The problem with the courts application of that provision as justification for overlooking the lack of Mr. It's been being a covered employee under the act and therefore his remedy subject to the act is that he was not his, his, his activity was not covered under the Longshore Act, explicitly in subsection F. Let me ask you this, as far as the part about says the Longshore Act doesn't cover someone if they're subjected to coverage under state workers comp law. As I read the record my understanding is that the defendant made that a high point of emotion for summary judgment and you've never responded to that. In your response, and the defendant then highlighted that again and they reply that you had not done anything to negate the notion that are to indicate your client was covered under state workers. You didn't ask file, sir apply you didn't follow motion for reconsideration. What is there in the record from your client to suggest he might have been subject to coverage under the state workers. What I believe is makes the Mr expert subject to coverage under the act is the act itself. The act Florida workers compact covers all injuries and accidents occurring in the territorial limits of the state of Florida, other than those excluded. And clearly those excluded are those, one of which is accidents, falling within the coverage of the longshore and harbor workers compensation. So we're starting this. Since this. Since this accident itself does not fall within the coverage, given this is a recreational vessel. By definition, the incident involving Mr expert would fall within the coverage of the state act. I distinguish that as whether there was coverage under the state act, just like in the aqua cam case there was not coverage under the longshore act in that case, but that this court that said that's a different issue. The question is, does the act apply and and aqua can they said it did. Could I could I break in with another question. This is pretty fundamental to my view. And so I want to make sure we have time for it. To me, there are complicated issues, obviously, of what he's covered under and this and that. But no matter what scheme we're dealing in. Is there evidence that Rizzo actually acted negligently it's obviously a tragedy happened in a horrible situation for your client and family, but given the actual facts of what happened. No matter what scheme we're under. Do we have evidence that the company acted negligently. Yes, I will refer to the evidence and the deposition testimony of the vessels captain captain smart and the vessels mate. Mr. Gotta get his name. Anyway, the vessels mate, who was the actual person in charge. At the time, at the time of the bow thruster was turned on. The evidence in the deposition is that the captain had been advised that the date. This incident occurred on the 27th. The captain had advised, as he had been in the past. On the 21st of June, that there would be whole cleaning at the request of the vessel at the request of Rizzo had been regularly performed on this vessel by Eastern Marine Services, that there would be somebody there at the 24th at the 26th at 7pm. It turned out and the captain acknowledged that that time was not appropriate because it was a four hour job, and it was already dark, that the whole cleaning but the captain had noticed the whole cleaning was going to take place. And the captain failed to advise the mate, who was the person in charge since the captain had left the vessel for an errand on the morning. Mr. arrived and was not present. But Mr. Mr marks the may return to the vessel. After the captain had left without the captain ever advising. Mr. that if that that there was, he should be aware of whole cleaning activity, given the notice that had been provided to the captain. But then notice the problem I see is that the notice said that the whole cleaning would happen the day before. And no one ever showed up. So, it doesn't, it doesn't seem logical to me that the captain would assume that at any moment, the whole cleaner could come by, I would think that they would assume that another email would say, here's when the whole cleaning will actually happen. The testimony that we cited from Captain smart was that it was quite often the case that there would be an email from Eastern Marine Services giving a time, and that they would not show up at that time but would show up to perform the whole cleaning activity that had been requested. That is exactly the custom and pattern that took place here, Mr Brizzo, excuse me, Brizzo was aware through captain of the vessel that whole cleaning was going to take place, and I believe it is probative of fault on the part of the vessel that the notice of activity to take place. He would have behaved differently. And he, including with the operation of the mouth ruster. Mr. Mr. You have finished your time but you have saved three minutes for rebuttal. Mr Massey. Yes, good morning, and may it please the court. My name is Jules Massey, I have the privilege of representing Brizzo LLC the vessel owner here. I'd like to address a few things that Mr Pope has just raised. First of all, I think it's, it is very important when looking at the application of the LH WCA to the negligence actions available to Mr express family is that the words that Mr Pope was using were covered employee. That is not what 905 be says it does not require it actually doesn't require an employee, it says, and I quote. Sorry, I had it up here. 905 be in the end of injury to a person covered under this act caused by the negligence of a vessel than such person, or anyone otherwise entitled to recover damages by reason thereof may bring an action against such vessel and the remedy in this subsection shall be exclusive of all other remedies against the vessel except remedies available under the act where the language becomes very important is there multiple rights that are granted under the LH WCA one is the right to workers compensation from an employer, which is why the employee definition becomes so important. But when it comes to the language actually used by Congress for for the 905 be negligence action it does not use employee. That is very important, because I think that stops the analysis right there because you have a traditional core maritime activity which is a worker working on a vessel, not adjacent to navigable waters but actually in the navigable waters. So this is another difference is that many of the cases in the appellants brief are talking about ship repairers vessel repairers that work on land. Let's assume we don't go with that argument, let's assume just can you can you proceed with your fallback position which I guess is that he's still not covered under Florida state workers comp law, correct. That is correct, there's nothing in the record that shows his eligibility for state workers comp. And the very important legal principle here is that the LH WCA is the default. It's, it's what provides the the answer. The Florida state workers comp is the exception to the LH WCA only in very specific instances. And in this case, there is no one, it's, it's undisputed that he did not have any Florida workers compensation coverage. And the exceptions that that the appellants are relying upon here only happen if there is state coverage, it's per se it's one or the other. You can't, you can't have someone fall through the cracks in this. So now help us with that let's assume you're right the Longshore Act applies, let's assume for a moment we'll assume in a minute it doesn't apply. What negligence standard applies under the Longshore Act and why is it that summary judgments appropriate based on the ground that you were not negligent. Okay. Duty is a legal question. Under the LH WCA the duties of a vessel owner to a contractor, and the contractors employees. And there's some, it really is irrelevant whether whether expo was an independent contractor and employee for our purposes. What are your, what are your duties. The duties are one to turn over the vessel in a reasonably safe condition, so that an expert contractor can go about their work safely. That comes with it a duty to warn, but only of those things that a, an expert contractor should not already be aware of. Once the vessel is turned over there are two other duties that arise. One is the duty to intervene. And this is the narrowest of the duties which is that if the vessel is aware that there is a harm and actually has actual knowledge that there's a harm that's going to manifest to the workers, and has actual knowledge that the contractor is not protecting those workers there's a duty to intervene. And then, these are the symbiotic factors. Factors. Correct. Why applying that test and summary judgment was appropriate to you. In other words, you weren't negligent, because there's only there's only three duties and none of them ever arose, we have no duty to expo. That is, that is what the, the judge found and she was correct and I will say this is a most unusual case. Because there are no cases involving the Cyndia duties that that where where anyone is fighting whether the vessel had been turned over or not, it's almost an unheard of situation. And in fact the judge, Judge Rosenberg in her summary judgment, talked about equating it to trespassing, because if someone actually comes to your vessel and start doing work on it and you don't know about it. That's, that's akin to a trespasser that you have no knowledge of, and no duty has yet arisen because it's very important and this is the language of Cyndia and in how it. The Supreme Court says the turnover is when the vessel permits the stevedore or the contractor to commence working, I mean the term permit is very important. So, this is unusual because you just wouldn't normally have under most circumstances a stevedore sneaking aboard your vessel and starting to operate the cranes. That that's kind of a ludicrous thought. Yet, in the Chapman case that's kind of what happened which is a stevedore went on board a ship in the dark. The crew didn't know about it, he didn't ask for a light he didn't ask, he didn't let any of the crew know that he was doing and he was injured. The court found that there was no duty there. So that seems like, as Judge Grant was saying, it's pretty difficult if you have no idea somebody's under your boat to know you're not supposed to start the boat. And so that, that's the Longshore Act. Now let me ask you this other question because analytically this gets so confusing. Let's assume for some reason the Longshore Act doesn't apply, we're just into the big nebulous world of maritime liability, just general negligence, not Cyndia duties. What's your argument as to why if Longshore Act didn't apply you weren't negligent? Because even under a reasonable standard of care, there was no duty under this circumstance and I look again to Judge Rosenberg talking about trespassing. You're saying it's the same principle, if I don't know somebody's on my boat, as Judge Grant said, whatever the test is, if I don't know somebody's on my boat, you know, I may start the motor up, I just don't know. It's going to be the same sort of argument if the Longshore Act doesn't apply. Is that your position? Yes, Your Honor. I want to address the email, because that, you know, seems to be the only avenue by which the appellant is suggesting that any duty might have arose. In other words, that we might have known somehow that ICSPA was working on the vessel at the time that he was doing. I want to point out a few things. The email very specifically says that the vessel's next hull claiming was coming up approximately 626 at 7pm. Now, that was the day before the incident that's listed on that email. The email further says, though, that our schedules, meaning Eastern Marines divers schedules, our schedules constantly change so the date and time is at best, and it says at best, and then says a rough approximation. So not only is it just approximate, it's at best a rough approximation. Why is that? Because the divers are going to different boats, and they essentially wouldn't ever show up at the time on these emails. This was an automatically generated email that would just spit out, and what is the message of the email? The message of the email is your boat is on the list, but we don't know when we're going to get there. That's, that's essentially what all of the information that Captain Smart had. Now I want to point out something. It's clear in the record. Captain Smart left the vessel at 1030. Mr. ICSPA was already diving under the boat when the captain left. So this, this idea that the captain, you know, if he had mentioned to the mate, which by the way he was asked completely speculative questions on improper hypotheticals about what he would have done if he had known something different. But the idea that if he had given the crew a heads up, as the, as the appellants have suggested some vague notion that sometime divers will show up. You know this idea that, that he would have been giving that message to the crew when the diver was already under the boat. I mean it's, it's an extraordinary and tenuous burden to place upon a vessel that at some vague rumor that someone might be showing up to your boat, you need to be on like heightened alert. That's not, that's not the requirements there's no duty for a moored vessel to have a lookout. I mean that's part of maritime law. So to have a lookout for a diver to intercept them before they sneak under the boat and start working without your knowledge is just like a kind of a ludicrous duty to place upon a vessel owner, especially from a contractor who's in a far better position to guarantee their own safety. It's what didn't try to let anybody know that he was there he didn't use the dive flags we haven't even talked about the Pennsylvania rule. You know he broke the law. When he dove under the vessel. And yet, and yet, somehow, the captain and crew, if they had had heightened alert would have somehow prevented this. Am I correct in thinking that the record has shown that in the past Mr. And other divers with Mr. In particular would always let people know he was there he'd knock on the door, make sure people not as most of us would you wouldn't get under a boat, you know, with a propeller that and then it says particular time it's undisputed he did not do that. It is, it is completely undisputed that he did not do that. And yes, the custom and practice, because that makes perfect sense doesn't it because if the schedule is fluid. You would only know that the operation was going to commence when the diver actually got there. And so the diver prudently would inform the crew, allow the crew to turn the vessel over. Under Cyndia in a safe condition, meaning that it would lock out and tag out all of the underwater equipment under the boat that could harm the diver. And it's not until the diver knows that that's happened that they would enter the water, this is the custom and practice. Now, was that there. Mr Pope might mention that there was one time where the captain was aware that someone got in the water without letting anybody know one time in a, in a, in a, in a vast majority where this was the protocol. So at the end of the day, this is just an extremely unusual situation that, you know, once someone's under the water, there's no way to know that they're there. And that's what the Casa Sally case, I think it's very clear about the water in in Northwest Palm Beach is very dark. The unequivocal testimony is that you can only see inches below it. David Marks, the mate who actually fired up the bow thruster checked over the side to look to see in the water. He saw no bubbles, he couldn't see anything. What more is a vessel owner supposed to do. So I agree with the court, this is a tragic thing. But at the end of the day, the legal responsibility rests with the diver who gets in the water. Because the diver is in the best position to guarantee their own safety under these circumstances. And, and, and with that, unless there are further questions. That is all that I have. Thank you, Mr Massey, Mr Pope, you have reserved three minutes. And Mr Pope, let me let me just ask you something right off the bat. So, you have indicated that the piece of evidence that you're pointing to. I noticed the clock is not ticking down Miss Gettys. Oh, I get it. I'm sorry. The one piece of evidence that you have pointed to to show potential negligence on the part of the vessel owner is this email. What if we were to agree with you that this somehow put the ship on notice that the diver was coming. It is indefinite. It says here's the first day and time that you might see that. What was the ship owner supposed to do with that be on notice for a day, a week, a month. First, with respect to the notice. The, the passages we're talking about and counsel was referenced this vessel was called clean once a month. Under the same by the same person Eastern Marine by different divers not always Mr expert but others. It was always the same way they would send a message, a diver would come sometime around when the message said, but with respect to the courts particular question. I'm going to reference back to a case where the master of the ship. Didn't disseminate information that the master had as to the particulars of the waters, the ship was going to traverse which resulted in a great tragedy in Tampa the skyway bridge tragedy. And I'm particularly talking about in Ray Hercules carriers in which this court in affirming the denial of limitation to the owner of the summit venture found as fault. The fact that the master of the summit venture with when he did have knowledge that he should have transmitted to his crew, so they would be better prepared for the waters, they were transiting and I will compare that to so that Mr. Smart would be better prepared to decide whether he should or shouldn't operate the bow thruster until they determined whether there had been or had not been a diver dispatched to the vessel per an instruction or an advice he would have received from the master but didn't. Okay, but you you would you're not disputing the fact that Mr expo did not notify the ship when he arrived, and did not display the diver down flex correct. That is correct I have. Okay, so, so let's pretend that the ship captain tells everybody hey ship cleaning is going to happen soon I'm not sure when. What else would have been done other than what was done when when the sailors check the water before turning on the thrusters your client violated maritime safety law by my not announced by not displaying the flag and not announcing his presence. Two things I will try to rush through. Number one, the testimony of Captain smart is what the mate said he would have done. If he had been advised that the presence of a whole cleaner was to be expected. He said what he would do. He would have taken he would have paid attention to the cart that was on the pier right in front of him. When he, when he found out that there was supposed to be or might be a diver dispatch he would have called Eastern Marine, that's what the mate said he would have done. But for the fact that captain never told him to expect or even anticipate something happening during the time he was in charge of the vessel, namely, Mr smart. All right, thank you, Mr. Thanks to both of you, we have your case under submission.